## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THE TRAVELERS HOME AND MARINE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-1371-EFM-GEB |
| ) | |
| HTP, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

On November 21, 2017, the Court held an in-person hearing to discuss two pending discovery motions: 1) Defendant HTP's Motion to Compel Discovery Responses from Plaintiff (**ECF No. 124**); and 2) Plaintiff's Motion to Compel Discovery Responses from Defendant HTP (**ECF No. 125**). Plaintiff appeared through counsel, Derek Casey. Defendant HTP, Inc. appeared through counsel, David Steed. Defendants Comfort Products Distributing, LLC and Carrier Enterprise, LLC appeared through counsel, Joseph Cassell. Defendant Wonsetler Refrigeration, Inc. appeared through counsel, J. Philip Davidson. Defendant Comfort Sales Agency, Inc. did not appear. After consideration of the parties' briefing, the oral arguments of counsel, and review of the documents submitted in camera, the Court announced the following rulings at the hearing: Defendant HTP's Motion to Compel (ECF No. 124) is GRANTED; and

Plaintiff's Motion to Compel (ECF No. 125) is GRANTED in part and DENIED in part as set forth below.

## I.    Background[1]

Plaintiff Travelers Home and Marine Insurance Company ("Travelers") insured a residential home, owned by the Julian family in McPherson, Kansas, against damage by fire.  The Julian home contained a Voyager Water Heater, designed and manufactured by defendant HTP, Inc.  The water heater used a hot surface igniter, rather than a pilot light, to ignite natural gas to heat water, and in late 2013, the igniter dislodged causing a fire that seriously damaged the Julian home.  Travelers paid the Julians' claim for repairs, and filed this subrogation action in November 2015 against all defendants to recover the costs of repair.  Defendants Comfort Sales Agency, Comfort Products Distributing, Carrier Enterprise, and Wonsetler Refrigeration are sellers and distributors of the HTP Hot Surface Igniters.

Two issues have arisen which led to the instant discovery disputes.  One issue concerns the occupancy of the Julian home.  At the time of the fire, the home was listed for sale but personal belongings remained in the home.  Citing the insurance policy's "vacancy clause," HTP now questions whether Plaintiff properly applied its policy to the Julians' claim.

---

[1] The information recited in this section is taken from the parties' briefs regarding the instant motions (ECF Nos. 124, 125,133) and the parties' pleadings (Compl., ECF No. 1; Answers, ECF Nos. 17, 20-22).  This background information should not be construed as judicial findings or factual determinations.

The second topic concerns other fires involving the same ignitor. During discovery, the parties learned of a series of events which led HTP to redesign the water heater to ensure the igniter did not dislodge. After discovering a number of other fires potentially related to the igniter issue, HTP prepared a spreadsheet in late 2009 or early 2010 containing information on those fires. That spreadsheet was first produced during the February 10, 2017 deposition of Kim Carvalho, records custodian for HTP. Marked "Deposition Exhibit 39," this spreadsheet contained multiple instances of similar fires across the country (filed as sealed exhibit, ECF No. 99, Ex. 1). Citing relevance to its claim that HTP failed to provide a post-sale warning to the Julians, Plaintiff has since been attempting to gain information about the fires listed on that spreadsheet.

Despite the current disputes and the age of this action, this case has progressed through pretrial discovery with minimal disagreements, and the discovery deadline of December 20, 2017, is fast approaching. Dispositive motions are anticipated, with a filing deadline of January 25, 2018.

## II.    Compliance with D. Kan. Rule 37.2

Throughout the briefing (*see., e.g*., Motion, ECF No. 124 at 3, ¶ 4), prior briefing on similar issues (ECF Nos. 99, 100, 113, 117), and during the recent in-person hearing, the parties demonstrated multiple attempts to resolve their differences on the pending discovery issues. Therefore, the Court is satisfied they have sufficiently conferred as required by D. Kan. Rule 37.2 and Fed. R. Civ. P. 37(a)(1). However, despite their

attempts, the parties could not resolve all disputes, leading to the following motions.  The Court addresses each motion in turn.

## III.    Defendant HTP's Motion to Compel Discovery Responses from Plaintiff (ECF No. 124)

Arguing the vacancy clause of the insurance policy may have provided Plaintiff a defense to the Julians' claim, HTP seeks to discover from Plaintiff items responsive to the following request:

> **REQUEST NO. 11:** Please produce Travelers' internal adjusting guidelines, policies and procedures for investigating and/or adjusting residential fire claims in which the residence is unoccupied or infrequently occupied or listed for sale.

Plaintiff objected to production on two bases:  1) relevance, contending its internal policies and procedures are irrelevant to any claim or defense; and 2) confidentiality, arguing its policies constitute confidential commercial information; the production of which would cause harm to Plaintiff in its competition with other insurers, including those providing insurance in this case to Defendants.   The Court considers each objection.

### A.    Relevance

HTP argues the vacancy of the Julian home is relevant to this case for a couple of reasons.  To start, HTP contends because the home was apparently unoccupied at the time of the fire, the exact time of the fire is unknown.   Also, because the fire was not immediately discovered, it caused additional damage—in this case, considerable water damage occurred between the apparent fire and its discovery.  HTP contends this relates

to the proper extent of damages, equating this to a mitigation issue.   In response, Plaintiff argues that, rather than focusing on the cause of the fire and Defendants' potential liability to reimburse Plaintiff for the repairs (i.e., a standard subrogation claim), HTP is instead focusing on whether Plaintiff properly paid the claim in the first place.

In its written motion, HTP provides no authority for its assertion that the internal adjusting guidelines are relevant to the parties' claims.   Instead, HTP focuses on deposition testimony of Plaintiff's adjuster, Michael Wallace, who said the vacancy clause of the insurance policy was "applicable . . . but was not enforced."   During the motion hearing, however, HTP pointed the Court to two Kansas state court cases finding that equitable subrogation does not relieve a litigant from the consequences of its own negligence.[2]   And, consequently, HTP contends that whether Plaintiff applied its own vacancy policies in its payment of the Julians' claim is relevant to not only the parties' claims, but also to its defenses insofar as Plaintiff's duty to mitigate damages.

Plaintiff, on the other hand, contends HTP misconstrues Mr. Wallace's deposition and the context surrounding his comments (transcript attached to Pl.'s Response, ECF No. 133, Ex. A).   Mr. Wallace also testified the home was "considered not to be vacant because of the periodic occupancy by the son, as well as personal belongings throughout the house." (Wallace Dep., 41:1-3; ECF No. 133, Ex. A.).   Although Plaintiff provides no

---

[2] *Bankers Tr. Co. v. United States*, 29 Kan. App. 2d 215, 222, 25 P.3d 877, 882 (2001) (holding, "the doctrine of equitable subrogation may not be applied to relieve a party who negligently takes a lien on or an interest in property which is subject to prior liens of record of which that party had either actual or constructive notice.   To apply equitable subrogation under those circumstances would be tantamount to relieving that party of a condition attributable to a failure to exercise ordinary care for his, her, or its own interests."); *Harms v. Burt*, 30 Kan. App. 2d 263, 267, 40 P.3d 329, 332 (2002) (discussing *Bankers Tr. Co.*, 29 Kan. App. 2d, 25 P.3d at 877).

binding authority for its position, it provides some persuasive authority from a Florida state appellate case[3] and from treatises on insurance law. Those sources essentially agree, "where [an] insurance company has paid a loss, its right to subrogation is *generally* not affected by the fact that it might have successfully contested the insured's claim."[4]

However, Plaintiff ignores an important piece of that statement—although this is *generally* true, other authority exists which analyze circumstances when a court might consider the appropriateness of the underlying payment of the claim within a subrogation action. For example, in the Tenth Circuit case of *Weir v. Federal Ins. Co.*,[5] defendant Federal Insurance Company ("Federal") paid its insured (Weir) $98,207.30 on his fire damage claim after his Whirlpool dryer caught fire, causing damage to Weir's home. However, the coverage of the policy was only $49,103.65. The day before the fire, Weir had asked his agent to double his coverage. Because the policy change had not been effected when the fire occurred, Federal initially refused to pay the higher amount. But after Weir sued Federal, they settled the policy claim portion of the suit for $98,207.30. Federal then sued Whirlpool on its subrogation claim. Whirlpool claimed Federal was only obligated to pay the original policy amount of $48,103.65, and the additional claim payment was paid voluntarily. The Tenth Circuit found, "if Federal paid the Weirs for losses not covered by the policy, Federal has no *contractual* right to recover that payment

---

[3] *Nat'l Marine Underwriters, Inc. v. Loring*, 568 So. 2d 1007, 1008 (Fla. App. 1990) (*citing Firestone Service Tires, Inc. v. Wynn*, 131 Fla. 94, 179 So. 175 (1938); 16 Couch Cyclopeida of Insurance Law, §61:59 (1983); 6A Appleman's Insurance Law & Practice, §4102 (1972)).

[4] 46A C.J.S. Insurance §1996 (WestLaw, December 2017 Update) (emphasis added).

[5] *Weir v. Fed. Ins. Co.*, , 1394 (10th Cir. 1987)

from Whirlpool.  Federal could still recover that payment from Whirlpool through *equitable* subrogation, but only if the payment was not voluntary."[6]

Applying the rationale from *Weir* to this case, it suggests if Travelers paid the Julians for losses not actually covered under the policy (because the home should have been considered vacant), Travelers has no *contractual* right to recover the payment from HTP—because the insurance contract would not have applied.  Here, it appears HTP is attempting to show that the Julians' loss was not covered under the insurance policy.  If this is the case, Plaintiff's internal adjusting guidelines could be relevant to this defense.

Moreover, the pleadings suggest—and Plaintiff's counsel confirmed at hearing— that Plaintiff asserts both contractual and equitable subrogation claims in this case.  On Plaintiff's *equitable* subrogation claim, it may only recoup its claim payment from HTP if its payment to the Julians was not voluntary.  HTP essentially claims that Plaintiff's payment of the claim was voluntary because it chose not to enforce the vacancy clause. So, under *Weir*, HTP makes a colorable argument that the underlying coverage issue is relevant to either a contractual or equitable subrogation claim.

Admittedly, though, *Weir* is not controlling.  Although *Weir* is a helpful illustration of the issues currently before this Court, this Tenth Circuit case interprets Colorado, not Kansas, law.  The parties agree that Kansas law applies to this diversity action.  But, similar to *Weir*, Kansas state courts have found voluntariness may be a defense to an equitable subrogation claim; although voluntariness is not a defense to a contractual (conventional) subrogation claim.  In *Hartford Fire Ins. Co. v. W. Fire Ins.*

---

[6] *Id.* at n.4 (some emphasis added).

*Co.*,[7] the Kansas Supreme Court found, "The defense that the party claiming the rights of subrogation is a volunteer is available against a claim of legal [equitable] subrogation in appropriate circumstances, but not against a claim based on conventional [contractual] subrogation."[8]  So, under Kansas law, HTP may at least assert a colorable defense of voluntariness to Plaintiff's equitable subrogation claim.

Although these cited cases and secondary sources do not discuss the issue of discovery, a review of these authorities suggests the apparent vacancy clause (and Plaintiff's application of that clause) may be relevant to the claims and defenses of the parties, and therefore falls within the scope of discovery established by Fed. R. Civ. P. 26(b).  Whether Plaintiff has stated a valid contractual or equitable subrogation claim— and the related issue of whether evidence of voluntariness will be permitted at trial—will be a question for the trial judge.  But under Rule 26(b), information related to the claims and defenses of the parties "need not be admissible in evidence to be discoverable."[9] Relevance is broadly construed during discovery,[10] and "courts should lean towards resolving doubt over relevance in favor of discovery."[11]  Although relevance must be

---

[7] *Hartford Fire Ins. Co. v. W. Fire Ins. Co.*, 226 Kan. 197, 207 (1979).

[8] *Id.*

[9] Fed. R. Civ. P. 26(b).

[10] *Gilmore v. L.D. Drilling, Inc.*, No. 16-2416-JAR-TJJ, 2017 WL 3116576, at *3 (D. Kan. July 21, 2017) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

[11] *Folger v. Medicalodges, Inc.*, No. 13-1203-MLB-KMH, 2013 WL 6244155, at *2 (D. Kan. Dec. 3, 2013) (citing *Jackson v. Coach, Inc.*, No. 07–2128–JTM–DWB, 2008 WL 782635, at *4 (D. Kan. Mar. 20, 2008); *Teichgraeber v. Mem'l Union Corp. of Emporia State Univ.*, 932 F. Supp. 1263, 1266 (D. Kan. 1996)).

considered with proportionality,[12] Plaintiff makes no argument that the discovery is disproportionate; therefore, the Court finds the information at least facially relevant and discoverable.

### B.    Confidentiality

In addition to relevance, Plaintiff objects to production on the basis of confidentiality.  Plaintiff relies on Fed. R. Civ. P. 26(c)(1)(g) to argue its internal adjusting guidelines, policies and procedures for residential fire claims constitute confidential commercial information which should not be revealed.  But Plaintiff's argument is lacking.  First, HTP is not seeking *all* of Plaintiff's internal policies and guidelines, but properly narrowed its request to those for "which the residence is unoccupied or infrequently occupied or listed for sale."  And, Rule 26(g) does not require the Court to prohibit disclosure, but simply permits the court, on a showing of good cause, to "require that a trade secret or other confidential . . . commercial information not be revealed or be revealed *only in a specified way*" (emphasis added).

A Protective Order has already been entered in this case (ECF No. 69), which prevents any party from utilizing the information produced outside this litigation.  However, the Court recognizes Plaintiff's valid concern that the current Protective Order would not shield its internal policies from view, potentially, by the insurance companies that (assumedly) assist in the defense of all named defendants.  Therefore, in its

---

[12] *See Gilmore*, 2017 WL 3116576, at *1 (noting "Considerations of both relevance and proportionality now govern the scope of discovery") (citing Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment).

9

discretion as permitted under Rule 26(g), the Court orders the parties to submit an amended or second Protective Order which permits designation of information as "attorneys eyes only." Counsel may then determine whether the voluntariness defense is meritorious without sharing the information with any party, which should satisfy Plaintiff's concerns regarding dissemination of its confidential commercial information to competing insurance companies.

### C.     Conclusion on HTP's Motion to Compel (ECF No. 124)

At this stage, discovery is broad, and a more restrictive protective order could alleviate confidentiality concerns. Plaintiff's objections to producing the information requested under HTP's Request No. 11 are overruled, and HTP's Motion to Compel is **GRANTED** as set forth above. HTP must submit an amended or second Agreed Protective Order by **December 1, 2017**. Plaintiff must produce documents responsive to HTP's Request No. 11 by **December 5, 2017**.

## IV.    Plaintiff's Motion to Compel Discovery Responses from Defendant HTP (ECF No. 125)

After addressing HTP's motion to compel during the motion hearing, the Court turned to Plaintiff's motion. The topic of this motion was discussed in a prior hearing held September 27, 2017. In an earlier-filed motion (ECF Nos. 99, 100), Plaintiff sought discovery of information related to other fires allegedly involving the same hot surface ignitor of the water heater. After the parties disagreed on the proper scope of discovery, they eventually agreed that HTP would search for information related to eight separate

10

fires. HTP initially produced some information, but withheld multiple documents on the basis of privilege.

Although HTP did not initially produce a privilege log to substantiate its privilege claims, on September 18, 2017, the Court ordered HTP to produce a privilege log to both Plaintiff and to the Court (ECF No. 113). Finding the log insufficient to assess the privilege claims, at the September 27, 2017 hearing, the undersigned ordered HTP to produce a revised, detailed privilege log to both Plaintiff and the Court (ECF No. 117). HTP provided a revised privilege log as ordered (ECF No. 118), but Plaintiff now asks the Court to order HTP to produce **six documents** described on that log. Pursuant to the Court's order (ECF No. 128), HTP produced the documents for in camera review.

The six documents at issue are all referenced on HTP's privilege log, and HTP claims either attorney-client and/or work product protections apply to prohibit their disclosure. The Court has now reviewed the parties' written arguments, reviewed all disputed documents in camera, and considered the parties' oral argument. After considering all of the above, the Court is prepared to rule.

### A.  Legal Standards – Attorney-client privilege and work product protection

Before addressing the parties' contentions, a review of the legal standards applicable to the attorney-client privilege and protection under the work product doctrine is necessary. In federal court, Fed. R. Evid. 501 determines the law applicable to an

analysis of privilege.[13]  In a diversity case such as this one, FRE 501 requires a decision on privilege be made according to state law.[14]  Though Kansas law provides the starting point, at least one court in this district indicated, "whether the court applies federal or Kansas law generally makes no difference in determining whether the attorney-client privilege applies."[15]

Under K.S.A. § 60-426 and interpreting caselaw, the essential elements of the attorney-client privilege are: (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.[16]

"In diversity cases, work-product protection is governed by the uniform federal standard outlined in Fed. R. Civ. P. 26(b)(3).  To establish work-product protection, [the withholding party] must show "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[17]

---

[13] *Schmitz v. Davis*, No. 10-4011-RDR-KGS, 2011 WL 1627010, at *6 (D. Kan. Apr. 28, 2011) (citing *ERA Franchise Sys., Inc. v. N. Ins. Co. of N.Y.*, 183 F.R.D. 276, 278 (D. Kan. 1998)).

[14] *Frontier Refining, Inc. v. Gorman–Rupp Co.,* 136 F.3d 695, 699 (10th Cir. 1998); *see also Schmitz*, 2011 WL 1627010, at *6 (internal citations omitted).

[15] *Simmons Foods, Inc. v. Willis*, No. 97–4192–RDR-DJW, 191 F.R.D. 625, 632 n.1 (D. Kan. 2000) (internal citations omitted).

[16] *Simmons Foods*, 191 F.R.D. at 631 (citing *State v. Maxwell,* 10 Kan. App. 2d 62, 63 (1984), and K.S.A. § 60–426 (1994)).

[17] *Kannaday v. Ball*, 292 F.R.D. 640, 648 (D. Kan. 2013).

If a party withholds information claiming privilege, under Fed. R. Civ. P. 26(b)(5)(A) "the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." The party seeking to withhold information based upon either the attorney-client privilege or work product immunity bears the burden to demonstrate the asserted privilege applies.[18] If the withholding party fails to make the required showing, by not producing a privilege log or by providing an inadequate one, the court may find the privilege waived.[19]

Also relevant to this dispute is the court's treatment of an insurance investigation. Interpreting Kansas law, courts in this district have found, "[T]he initial investigation of a potential claim, made by an insurance company prior to the commencement of litigation, and not requested by or made under the guidance of counsel, is made in the ordinary course of business of the insurance company, and not 'in anticipation of litigation or for trial . . .'"[20]

---

[18] *Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2012 WL 1207232, at *12 ((D. Kan. Apr. 11, 2012) (citing *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir. 1984); *McCoo v. Denny's Inc.,* 192 F.R.D. 675, 680 (D. Kan. 2000); *Johnson v. Gmeinder,* 191 F.R.D. 638, 642 (D. Kan. 2000)).

[19] *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 448 (D. Kan. 2009) (citing *In re Universal Serv. Fund Tel. Billing Practices Litig.,* 232 F.R.D. 669, 671 (D. Kan. 2005) (internal citations omitted)).

[20] *Kannaday*, 292 F.R.D. at 649 (citing *Henry Enterprises, Inc. v. Smith,* 225 Kan. 615, 592 P.2d 915 (1979)).

### B.    Analysis

With the above standards in mind, the Court makes the following orders regarding each disputed document, addressed in the order contained on the privilege log and in the briefing:

1.    **Document No. 00466/3** – Privilege Log, Page 3.  The privilege log describes the document as a communication by HTP (through its President) to its insurance agent.  HTP did not provide sufficient information, either on the privilege log or in the documents themselves, for the Court to conclude the document was prepared in anticipation of litigation or for trial.  Therefore, HTP has failed to meet its burden of proof to withhold the document.  This document must be **PRODUCED**.

2.    **Document No. 00569/1** — Privilege Log, Page 4.  This document contains two emails:  the top half reflects an email from Kim Carvalho, HTP employee, to current HTP counsel, dated 7/21/17.  The bottom half of the document is an email from an HTP employee to Kim Carvalho dated 6/8/10.  HTP did not provide sufficient information, either on the privilege log or in the documents themselves, for the Court to conclude the information was prepared in anticipation of litigation or for trial, therefore HTP fails to meet its burden of proof.  The top half of the document (the 7/21/17 email) **must be REDACTED;** the remainder must be **PRODUCED**.

3.    **Document No. 00571/1** – Partial Redaction – Privilege Log, Page 5.  There are two emails on this document; the first email is between two employees of HTP discussing the request of an insurance adjuster.  The second email is from the insurance adjuster, sending information from a claimant's own insurance carrier.  HTP did not provide sufficient information, either on the privilege log or in the document itself, for the Court to conclude the information was prepared in anticipation of litigation or for trial; therefore HTP fails to meet its burden of proof.  This document must be **PRODUCED.**

4.    **Document Nos. 00576/1 through 7** — Privilege Log, Page 5.  This incomplete document appears to be an insurance adjuster's report, outlining his overall investigation of a related fire.  After reviewing the contents of this document, and taking counsel at his word that this report was sent directly to HTP counsel, this document is properly **WITHHELD** as attorney-client communication.

5.    **Document Nos. 00580/1 through 3** — Privilege Log, Page 6.    These documents consist of four emails regarding an investigation of an    unrelated fire in 2011.    The first email, dated 7/21/17 is from Kim Carvalho to HTP's current counsel.    The remaining emails, dated from 11/4/11 to 12/1/11, are exchanges between Kim Carvalho and an insurance claims examiner.    HTP did not provide sufficient information, either on the privilege log or in the documents themselves, for the Court to conclude the information was prepared in anticipation of litigation or for trial, so HTP fails to meet its burden of proof for the 2011 emails.    The top half of the document (the 7/21/17 email) **must be REDACTED;** the remainder must be **PRODUCED.**

6.    **Document Nos. 00585/1 through 2** — Partial Redaction — Privilege Log, Page 6.    These documents consist of three emails regarding another unrelated fire investigation.    The first email, dated 7/21/17, is between Kim Carvalho and HTP's current counsel. Plaintiff agrees this email may be redacted as attorney-client communications.    The second email is between an insurance claims examiner and Kim Carvalho dated 11/19/14.    The final email, dated 11/19/14 is from an assistant for an engineering consulting group which apparently investigated a part of that fire, and prepared a report of findings sent to the insurance claims examiner.    HTP did not provide sufficient information, either on the privilege log or in the documents themselves, for the Court to conclude the information was prepared in anticipation of litigation or for trial, so HTP fails to meet its burden of proof for the 2014 emails.    The top half of the document (the 7/21/17 email) must be **REDACTED;** the remainder must be **PRODUCED.**

## C.    Conclusion on Plaintiff's Motion to Compel (ECF No. 125)

Finding some documents properly withheld by HTP, but requiring others to be produced, Plaintiff's motion to compel is **GRANTED** in part and **DENIED** in part as set forth above.    Despite the partial granting of Plaintiff's motion, at this juncture, the Court finds the award of sanctions inappropriate under Fed. R. Civ. P. 37(a)(5)(C).    The circumstances of this dispute, including the continuing efforts of the parties to resolve it and the well-reasoned positions of both parties, make an award of expenses unjust.    HTP must produce the documents no later than **December 5, 2017**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 1st day of December 2017.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge